CLARKSON, Plaintiff in Error, v. MORRISON'S ADMINISTRATOR, Defendant in Error.

1. A., B. and C. entered into a tripartite agreement under seal, whereby it was covenanted that a pork-house should be built upon a certain lot recited therein, to be held by C. under a lease from one D.—B. to erect the said pork-house—A. to advance to B. $1000—C. to advance $3000 to B., and to surrender to B. all liens and securities held against him by C. except his (said C.'s) titles, liens and security to and upon said lot and certain other specified lots—C. to make a lease of said pork-house, when completed, to A. for a term of two years at the annual rent of $2000 ; the amount of $1000 advanced by A. to be credited to him for the first half year's rent—the rents to accrue upon said pork-house, and a hemp warehouse upon the same lot, to be paid to C., to be applied by him in the payment of the ground rent, insurance, taxes, &c. ; the remainder to be applied in extinguishing the debt due, or to become due, from B. to C.—C. to keep the buildings leased and producing rent—C., whenever he should be paid all debts due from B., to assign to B. the lease from D. or any renewal thereof. *Held,* that a failure to complete the building would not give to A. a cause of action against C. ; nor could A. treat the money advanced by him to B. as money advanced upon the credit of C.

2. Amendments should be liberally allowed.

### *Error to St. Louis Court of Common Pleas.*

The following tripartite agreement, under seal, dated May 24, 1848, was executed by J. S. Morrison, Charles Collins and Charles S. Clarkson : " Whereas, Joseph S. Morrison now holds a certain lot of ground on Broadway, in the city of St. Louis, under a lease from Mrs. Ashley, on which lot is now standing a hemp warehouse, lately built by Charles Collins under contract with said Morrison ; and whereas, it has been contracted and agreed by and among the parties hereto, that a pork-house shall be erected on said lot, to be tenanted and used, when completed, by Charles S. Clarkson ; now it is agreed and covenanted by and among the said Morrison, Collins and Clarkson, as follows : 1. Charles Collins is to erect upon said lot, and that part of it which lies between the hemp warehouse and Broadway, a pork-house, which is to be not less than fifty feet

wide, and of the same length of the hemp warehouse; to be three stories high, and be built in a substantial and workmanlike manner. The plan of the pork-house and its internal arrangements are to be such as shall be acceptable to said Clarkson, and the whole house shall be completed on or before the fifteenth day of October, 1848. 2. In order to enable the said Collins the better to carry on and complete the building of the pork-house, the following means and conveniences are to be furnished to him, viz: 1st. Said Clarkson is to advance to said Collins, without delay, one thousand dollars in money, which sum of one thousand dollars is to be made good to the said Clarkson, by a credit for the first half year's rent of said pork-house after he becomes tenant thereof. 2d. Said Joseph S. Morrison is to surrender and give up, in a good and effectual manner, all the liens and securities which he holds against said Collins and Samuel M. Bowman, or either of them, except only his (said Morrison's) titles, liens and securities to and upon the lot of ground on Broadway, held by lease from Mrs. Ashley, with the buildings erected or to be erected thereon, and the property at the corner of Green and Second streets, called the 'Scott House property;' and except, also, his titles, liens and securities to and upon a certain tract of land situate in Lincoln county, and contaiining about two thousand arpens; and as to the said Lincoln county lands, the said Morrison is to give to said Collins good written authority for power of attorney or otherwise, to sell or encumber the said land, or any part thereof, for the purpose, first, of raising one thousand dollars, to be applied by said Collins towards the building of said porkhouse; and second, whatever additional sums may be raised by said Collins, out of said land, shall be paid to the said Morrison, and credited to said Collins on his indebtedness to said Morrison; and the said Morrison is to advance to the said Collins the sum of three thousand dollars in money, in the sums and at the times following—that is, on the fifteenth day of June, 1848, one thousand dollars; on the 15th day of August, 1848, five hundred dollars; on the fifteenth day of September,

1848, five hundred dollars; on the fifteenth day of October, 1848, five hundred dollars; on the fifteenth day of July, 1848, five hundred dollars. 3. As soon as said pork-house shall be completed, the said Morrison shall make a lease thereof to the said Clarkson, and the said Clarkson shall accept the same, for the term of ten years, at the annual rent of two thousand dollars, payable semi-annually. 4. All the rents to accrue upon the lot of ground on Broadway, including both the hemp ware-house and the pork-house, shall be paid to the said Morrison, out of which he shall pay the ground rent and insurance upon the houses, and all taxes upon said property. The residue of the rents so received shall be applied as follows: In order to cover interest at six per cent. on advances, and commissions at six per cent. for renting, insuring, and superintending the property, said Morrison shall retain twelve per cent. upon the entire amount of his advances to said Collins, made at any time heretofore, or that may be made hereafter, in connection with the buildings and improvements upon said leasehold property on Broadway, and the remainder shall go to the extinguishment of the principal of the debts due or to become due from said Collins to said Morrison, and shall be credited accordingly. 5. The said Morrison shall use all reasonable care and diligence to keep both the hemp warehouse and the pork-house leased and producing rent to the best advantage, and to collect such rents as shall become due; but he shall not be answerable for any rents that can not be collected by the use of such care and diligence. 6. Whenever the said Charles Collins or his legal representatives shall fully pay off and satisfy all debts due from him to said Morrison, the said Morrison or his representatives shall assign to the said Collins or his representatives the aforesaid lease from Mrs. Ashley, or any renewal thereof which may then be in existence. In testimony whereof," &c.

This suit was instituted by Clarkson against the administrator of Morrison to recover damages for a failure on the part of said Morrison to erect the pork-house, which it was alleged he had engaged by the above contract to build. The second amended

petition contained four several causes of action or *counts*. The first count is founded upon the agreement above set forth, and the breach alleged is a failure on the part of Morrison to build the said pork-house according to the stipulations of the above agreement. The second *count* alleges an extension of time to said Morrison from the 15th of October, 1848, to the 1st of December, 1848, for the completion of the building, and a failure on said Morrison's part to complete the same. The third *count* is founded upon an alleged oral promise of Morrison, made on the 16th of October, 1848, to complete the erection of said pork-house. The fourth cause of action is for money laid out and expended by plaintiff, Clarkson, upon said building while in process of erection. Demurrers were sustained to the first and second *counts* of the petition. The third and fourth *counts* of the petition were stricken out on motion of defendant, because the subject matter of said counts was new and different from the cause or causes of action set forth in the original petition. Said original petition contained the following passages : " Said Morrison, both before and after the making of said contract [the one above set forth], promised and agreed with said Clarkson that he, said Morrison, would build and complete said pork-house according to the understanding of the parties," &c. " Plaintiff further states that in the spring of the year 1849, before the burning of said pork-house, the buildings and walls thereof were in a sinking and damaged condition, and the said Clarkson, being anxious to have the said house, if possible, in a fit and proper condition for his business, with the assent of said Morrison, did expend large sums of money in endeavoring to repair the same and prop the walls thereof."

*Glover & Richardson* and *C. Gibson*, for plaintiff in error.

I. The court erred in sustaining the demurrer to the first cause of action. The contract imposed upon Morrison an obligation in favor of Clarkson to secure the erection of the pork-house. (11 Verm. 491 ; 34 Maine, 309.)

II. Also in sustaining the demurrer to the second cause of action. (Cummings v. Arnold, 3 Metc. 486 ; 10 Ad. & El. 57.)

III. The motion to strike out the third and fourth causes of action should have been overruled. (Cunningham v. Day, 2 S. & R. 1 ; Rodigue v. Curcier, 5 Binn. 31 ; Farmers' and Mechanics' Bank v. Israel, 6 S. & R. 294 ; Donner v. Shaw, 3 Fost. 125 ; 1 Miles, 67.)

*Todd* and *Krum*, for defendant in error.

LEONARD, Judge, delivered the opinion of the court.

The main question is as to the proper construction of the articles of agreement upon which the first and second counts of the last amended petition were founded. It is supposed, on one side, that this instrument created a personal obligation against Morrison, not only to grant a lease on the pork-house to Clarkson when it should be erected, but also to cause it to be erected as prescribed in the articles ; while, on the other side, it is insisted that the obligation to erect the building was exclusively upon Collins ; to enable him to do which, money was to be advanced to him by both Morrison and Clarkson ; and that the only obligation upon Morrison was to make the lease when the building should be erected, and to accept Clarkson's advance of a thousand dollars to Collins as a payment of the first half year's rent.

To enable us to put a proper construction upon this agreement, we ought to be made acquainted with the circumstances that surrounded the parties at the time it was entered into ; but the only light we have on the subject is what is disclosed by the instrument itself. Judging from the written articles, we should infer that Collins was the real owner of the leasehold interest upon which the pork-house was to be erected, and that he was indebted to Morrison, who held this and other property belonging to Collins in trust to secure that indebtedness ; that these two parties—Collins and Morrison—were desirous of

making this property productive—the former as owner, and the latter as a lien creditor—and that Clarkson desired to secure the use of the house as soon as it should be erected, in order to carry on his business in it. The words of the instrument do not impart an obligation on the part of Morrison to have the building erected ; but Collins expressly binds himself to do this, and, to enable him to do so, each of the other two parties— Morrison and Clarkson—expressly oblige themselves to make certain advances of money to him ; and the only express undertaking in the instrument on the part of Morrison in favor of Clarkson, is to grant him a lease of the building as soon as it should be erected, and to allow the thousand dollars advanced by Clarkson to Collins to go in extinguishment of the first half year's rent to become due upon the lease. It is argued, however, that Morrison was the real owner of the building to be erected, and that Collins was only interested in it as the contractor for its erection, and that therefore the contract, as between Morrison and Clarkson, ought to be construed as importing not only what was expressly agreed between them, but also that *the building should be erected as provided in the agreement*, so as to make Morrison liable for all the damages occasioned by the non-completion of the building. We think, however, that the ground here suggested for putting a construction upon these articles, not only not called for by the words of the agreement, but contrary to the apparent meaning of them, has no existence in fact, so far as we are able to judge from the recitals and stipulations of the contract ; and that instead of Morrison being the real beneficial owner of the leasehold interest in the lot on which the building was to be erected, it belonged, as before suggested, to Collins, who was interested in the proposed building as owner, and not as a building contractor ; and that Morrison's interest in the premises was only as the creditor of Collins, having a lien upon the property for the security of his debt. But whether we be correct or not in these conclusions as to the relations of the parties to the property, we are satisfied that the words of the instrument, considered by

themselves, will not bear the construction the plaintiff seeks to put on them, and that we are not authorized by the surrounding circumstances, so far as they are disclosed by the articles of agreement, to give them any other than their grammatical construction. The result is that upon the written agreement the plaintiff is not entitled to recover for the non-completion of the house, nor can he treat the thousand dollars, advanced by him to Collins, as money advanced under the agreement upon the credit of Morrison. The demurrer to the first and second counts we think therefore was well taken.

It only remains to consider the propriety of striking out the third and fourth counts, filed under a general leave to amend, on the ground that they brought into the record new causes of action not embraced in the original petition. In this particular we think the court erred. The original and first amended petitions are very inartificially drawn, but enough is shown to warrant the filing of the third and fourth counts. The third count is upon an oral promise of Morrison for the completion of the building, and the fourth count for money expended by Clarkson for Morrison. Both the original and the first amended petitions allege an oral promise on the part of Morrison to complete the building, and also contain an allegation of the expenditure of money upon the building by the plaintiff with the assent of Morrison. These matters, as before suggested, are very imperfectly stated, but enough is stated, in our opinion, to authorize the amendments made in the third and fourth counts. We do not know that this will avail the plaintiff any thing under the opinion now expressed in reference to the construction of the written agreement, but if the plaintiff have a right of recovery independent of the written contract, as is alleged in these counts, we should be unwilling to deny him redress on account of the imperfect manner in which his cause of action was originally stated.

Let the judgment be reversed and the cause remanded.